UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| MAGDALENA ACOSTA, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. |
| | § | |
| MICHAEL J. ASTRUE, | § | SA-06-CV-1043 OG (NN) |
| Commissioner of the Social | § | |
| Security Administration, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

**TO:**   Hon. Orlando Garcia
          United States District Judge

**Introduction**

Plaintiff Magdalena Acosta brought this action for judicial review of the final decision of the Commissioner of the Social Security Administration (the Commissioner), determining that Acosta was not disabled for the purposes of the Social Security Act (the Act) and denying Acosta's applications for Disability Income Benefits (DIB) and Supplemental Social Security Insurance (SSI) benefits. Acosta asks the district court to reverse the Commissioner's decision and to render judgment in her favor. In the alternative, Acosta asks the district court to reverse the decision and remand the case for further proceedings.

After considering Acosta's brief in support of her complaint,[1] the brief in support of the

---

[1] Docket entry # 13.

Commissioner's decision,[2] Acosta's reply brief,[3] the record of the SSA proceedings, the pleadings on file, the applicable case authority and relevant statutory and regulatory provisions, and the entire record in this matter, I recommend affirming the Commissioner's decision.

I have jurisdiction to enter this memorandum and recommendation under 28 U.S.C. § 636(b) and this district's general order, dated July 17, 1981, referring for disposition by recommendation all cases where a plaintiff seeks review of the Commissioner's denial of the plaintiff's application for benefits.[4]

## Jurisdiction

The district court has jurisdiction to review the Commissioner's final decision as provided by 42 U.S.C. §§ 405(g), 1383(c)(3).

## Administrative Proceedings

Based on the record in this case, Acosta exhausted her administrative remedies prior to filing this action in federal court. Acosta applied for DIB and SSI benefits on April 2, 2004, alleging disability beginning March 17, 2004.[5] The Commissioner denied the applications initially and on reconsideration.[6] Acosta then asked for a hearing before an ALJ.[7] A hearing was

---

[2]Docket entry # 17.

[3]Docket entry # 23.

[4]*See* Local Rules for the Western District of Texas, appx. C, p. 10.

[5]SSA record, pp. 55 & 184.

[6]*Id*. at pp. 16, 18, 36, 188 & 195.

[7]*Id*. at p. 41.

held before an ALJ on February 16, 2006.[8] The ALJ issued a decision on March 29, 2006, concluding that Acosta was not disabled within the meaning of the Act.[9] Acosta asked for review of the decision on May 3, 2006.[10] The Appeals Council denied the request for review on October 5, 2006 after determining that no basis existed for reviewing the ALJ's decision.[11] The ALJ's decision became the final decision of the Commissioner for the purpose of the district court's review pursuant to 42 U.S.C. § 405(g). Acosta filed this action seeking review of the Commissioner's decision on December 8, 2006.[12]

## Issue Presented

> Is the ALJ's decision that Acosta was not under a "disability," as defined by the Act, supported by substantial evidence and does the decision comport with relevant legal standards?

## Analysis

### A. Standard of Review

In reviewing the Commissioner's decision denying disability benefits, the reviewing court is limited to determining whether substantial evidence supports the decision and whether the Commissioner applied the proper legal standards in evaluating the evidence.[13] "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a

---

[8]*Id*. at pp. 207-43.

[9]*Id*. at pp. 20-7.

[10]*Id*. at p. 11.

[11]*Id*. at p. 5.

[12]Docket entry # 3.

[13]*Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); 42 U.S.C. §§ 405(g), 1383(c)(3).

reasonable mind might accept as adequate to support a conclusion."[14] Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"[15]

If the Commissioner's findings are supported by substantial evidence, then they are conclusive and must be affirmed.[16] In reviewing the Commissioner's findings, a court must carefully examine the entire record, but refrain from reweighing the evidence or substituting its judgment for that of the Commissioner.[17] Conflicts in the evidence and credibility assessments are for the Commissioner and not for the courts to resolve.[18] Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination: (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education and work experience.[19]

**1. Entitlement to Benefits**

---

[14] *Villa v. Sullivan*, 895 F.2d 1019, 1021-22 (5th Cir. 1990) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

[15] *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (quoting *Hames*, 707 F.2d at 164).

[16] *Martinez*, 64 F.3d at 173.

[17] *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *see also Villa*, 895 F.2d at 1021 (The court is not to reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner.).

[18] *Martinez*, 64 F.3d at 174.

[19] *Id*.

Every individual who meets certain income and resource requirements, has filed an application for benefits, and is under a disability, is eligible to receive benefits.[20] The term "disabled" or "disability" means the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[21]  A claimant shall be determined to be disabled only if her physical or mental impairment or impairments are so severe that he is unable to not only do her previous work, but cannot, considering her age, education, and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if he applied for work.[22]

**2. Evaluation Process and Burden of Proof**

Regulations set forth by the Commissioner prescribe that disability claims are to be evaluated according to a five-step process.[23]  A finding that a claimant is disabled or not disabled at any point in the process is conclusive and terminates the Commissioner's analysis.[24]

The first step involves determining whether the claimant is currently engaged in

---

[20] 42 U.S.C. § 1382(a)(1) & (2).

[21] 42 U.S.C. § 1382c(a)(3)(A).

[22] 42 U.S.C. § 1382c(a)(3)(B).

[23] 20 C.F.R. §§ 404.1520 and 416.920.

[24] *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

substantial gainful activity.[25] If so, the claimant will be found not disabled regardless of her medical condition or her age, education, or work experience.[26] The second step involves determining whether the claimant's impairment is severe.[27] If it is not severe, the claimant is deemed not disabled.[28] In the third step, the Commissioner compares the severe impairment with those on a list of specific impairments.[29] If it meets or equals a listed impairment, the claimant is deemed disabled without considering her age, education, or work experience.[30] If the impairment is not on the list, the Commissioner, in the fourth step, reviews the claimant's residual functional capacity and the demands of her past work.[31] If the claimant is still able to do her past work, the claimant is not disabled.[32] If the claimant cannot perform her past work, the Commissioner moves to the fifth and final step of evaluating the claimant's ability, given her residual capacities, age, education, and work experience, to do other work.[33] If the claimant cannot do other work, he will be found disabled. The claimant bears the burden of proof at the first four steps of the

---

[25] 20 C.F.R. §§ 404.1520 and 416.920.

[26] *Id.*

[27] *Id.*

[28] *Id.*

[29] *Id.*

[30] *Id.*

[31] *Id.*

[32] *Id.*

[33] *Id.*

sequential analysis.[34] Once the claimant has shown that he is unable to perform his previous work, the burden shifts to the Commissioner to show that there is other substantial gainful employment available that the claimant is not only physically able to perform, but also, taking into account his exertional and nonexertional limitations, able to maintain for a significant period of time.[35] If the Commissioner adequately points to potential alternative employment, the burden shifts back to the claimant to prove that he is unable to perform the alternative work.[36]

**B. Findings and Conclusions of the ALJ**

In the instant case, the ALJ reached his decision at step five of the evaluation process. At step one, the ALJ determined that Acosta had not worked at a level constituting substantial gainful activity since her alleged onset date.[37] At step two, the ALJ determined that Acosta has medically determinable impairments due to carpal tunnel/cubital tunnel syndrome of the right arm and depression.[38] The ALJ characterized these impairments as severe.[39] At step three, the ALJ found that Acosta's impairments, either singly or in combination, are not severe enough to meet, medically equal or functionally equal one of the impairments listed in 20 C.F.R., Part 404, Subpart P, Appendix 1 (Appendix 1).[40] At step four, the ALJ found that Acosta is unable to

---

[34]*Leggett*, 67 F.3d at 564.

[35]*Watson v. Barnhart*, 288 F.3d 212, 217 (5th Cir. 2002).

[36]*Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989).

[37]SSA record, pp. 21 & 26.

[38]*Id*.

[39]*Id*.

[40]*Id*. at pp. 23 & 26.

perform any of her past relevant work and that Acosta has the residual functional capacity to lift and carry a maximum of 10 pounds frequently and 20 pounds occasionally; to stand and/or walk for no more than 6 hours per 8-hour work day; to sit for no more than 6 hours per 8-hour work day; and to stoop and crouch no more often than occasionally; with no frequent and repetitive fingering.[41]  The ALJ also determined that Acosta has minimal fluency in English and that she is moderately limited in her ability to maintain concentration for extended periods.[42]  At step five, the ALJ determined that Acosta has no transferrable skills from any past work,[43] but that she can participate in other substantial gainful work that exists in significant numbers in the national economy.[44]  Thus, the ALJ concluded that Acosta is not disabled as defined in the Act.[45]

**C.  Acosta's Allegation of Error**

Acosta doesn't quarrel with the ALJ's determinations in steps one through four, but challenges the ALJ's step five analysis—the determination that Acosta can perform other substantial gainful work that exists in significant numbers in the national economy.  Acosta maintains that the ALJ applied the incorrect legal standard in finding that she can perform the jobs of outside deliverer, information clerk and call-out operator.[46]  She doesn't identify the incorrect legal standard that the ALJ purportedly used, but she complains that her reading and

---

[41]*Id*. at pp. 24 & 26.

[42]*Id*.

[43]*Id*. at pp. 25-6.

[44]*Id*.

[45]*Id*. at p. 27.

[46]Docket entry # 23, p. 1.  *See also* docket entry # 13, p. 8.

writing abilities are inconsistent with the requirements for these jobs as set out in the Dictionary of Occupational Titles (DOT).[47]  Acosta maintains that testimony by the vocational expert and her psychological assessment demonstrate that the ALJ erred.[48]

"When, as here, the claimant suffers from additional limitations that make the Medical-Vocational Guidelines [of the SSA regulations] inapplicable, the Commissioner must rely upon the services of a vocational expert or similar evidence"[49] to determine whether there is other work that the claimant can perform.[50]

> The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed.  A vocational expert is able to compare all the unique requirements of a specified job with the particular ailments a claimant suffers in order to reach a reasoned conclusion whether the claimant can perform the specific job.[51]

In determining whether the DOT constitutes similar evidence, the United States Court of Appeals for the Fifth Circuit has explained that the DOT "is not comprehensive, in that it cannot and does not purport to include each and every specific skill or qualification for a particular job."[52]  "To the extent that there is any implied or indirect conflict between the vocational expert's testimony and the DOT. . . the ALJ may rely upon the vocational expert's testimony provided that the

---

[47]Docket entry # 13, pp. 8-9.

[48]*Id*. at p. 8.

[49]*Carey v. Apfel*, 230 F.3d 131, 145 (5th Cir. 2000).

[50]*See Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986).

[51]*Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986).

[52]*Carey*, 230 F.3d at 145.

9

record reflects an adequate basis for doing so."[53] Because the "DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings,"[54] the ALJ may rely on a vocational expert "to provide more specific information about jobs or occupations than the DOT."[55] In Acosta's case, the record reflects an adequate basis for relying on the vocational expert's testimony that a person with Acosta's residual functional capacity and non-exertional limitations can perform jobs that exist in significant numbers in the national economy.

The record shows that Acosta's right arm is impaired by cubital tunnel syndrome—*i.e.*, "[t]he condition resulting from a compression or injury of the ulnar nerve at the elbow. It is marked by pain and numbness in the medial side (on same side as the little finger) of the forearm and hand."[56] Acosta has had multiple surgeries to alleviate the pain she experiences in her right forearm and wrist.[57] Acosta also suffers from major depressive episode, recurrent, severe, with anxious features.[58] "Major mental depressions have the following characteristics: (1) Loss of interest in pastimes or activities that previously brought pleasure. (2) Fear and anxiety about imaginary or real but trivial hazards. (3) Loss of energy. (4) Insomnia or, occasionally, excessive desire to sleep. (5) Loss of appetite, but occasionally, excessive appetite and weight gain. (6)

---

[53]*Carey*, 230 F.3d at 146.

[54]SSA Reg. 00-4p.

[55]*Id*.

[56]J.E. SCHMIDT, M.D., ATTORNEY DICTIONARY OF MED. 2-CH 7297 (Matthew Bender 2005).

[57]SSA record, pp. 132 & 136.

[58]*See* docket entry # 17, exh. 1.

Inability to concentrate. (7) Low self-esteem and feelings of worthlessness. (8) Occasionally, thoughts of suicide."[59] The ALJ determined that Acosta was also limited by non-exertional limitations[60]— specifically, that Acosta has minimal fluency in the English language and that she is moderately limited in her ability to maintain concentration for extended periods.[61]

The ALJ used Rule 202.16 of the Medical-Vocational Guidelines as a framework for determining whether substantial gainful employment exists that Acosta is physically able to perform, considering her nonexertional limitations.[62] Rule 202.16 applies to (1) a younger individual—Acosta was 44 at the time of her hearing—(2) who is illiterate or unable to communicate in English, (3) whose previous work experience was unskilled or who lacks previous work experience.[63] Rule 202.16 directs a finding of "not disabled." The application of this rule was a generous consideration because the record shows that Acosta can communicate in English, she is not illiterate, and two of Acosta's previous jobs are classified as semi-skilled.[64] The ALJ posed a hypothetical question to the vocational expert that incorporated Acosta's physical limitations and her non-exertional limitations.[65]

---

[59]J.E. SCHMIDT, M.D., ATTORNEY DICTIONARY OF MED. 4-M 400 (Matthew Bender 2005).

[60]SSA record, p. 25.

[61]*Id*. at p. 26.

[62]*Id*. at pp. 25-6.

[63]*See* 20 C.F.R. pt. 404, subpt. P, appx. 2, R. 202.16.

[64]SSA record, p. 235.

[65]*Id*. at p. 236. The ALJ asked the vocational expert about the jobs a person with the following characteristics could perform: "a person of the early 40s years of age," "grade school level of education," "minimal acceptable levels of literacy, English reading and writing and literacy," a "lifting ability of up to ten pounds on a frequent basis and up to 20 pounds on an occasional basis,"

Before identifying jobs that a person with Acosta's limitations could perform, the vocational expert first ruled out Acosta's past work because her past jobs required frequent fingering.[66] The vocational expert then identified three jobs that a person with Acosta's limitations can perform: (1) outside deliverer, (2) call-out clerk, and (3) information clerk.[67] The vocational expert estimated that there are about 2,200 outside deliverer jobs in Texas with about 40,300 nationwide;[68] about 2,100 call-out operator jobs in the region with about 26,500 nationwide;[69] and about 5,000 information clerk jobs in the region with about 70,000 nationwide.[70] This evidence supports the ALJ's determination that Acosta can perform jobs that exist in significant numbers in the national economy.

On cross-examination, Acosta's attorney modified the ALJ's hypothetical to include a second-grade reading level and borderline intellectual functioning, and then asked if a person with those limitations can perform the jobs of outside deliverer, call-out clerk, and information clerk. The vocational expert explained that the jobs required some reading and adequate intelligence to interact with customers such that a second-grade reading ability and borderline intellectual functioning would not be appropriate for the jobs of outside deliverer, call-out clerk,

---

a "restriction to not do frequent and repetitive fingering, although occasional fingering would be possible," and "a restriction further not to be required to perform any duties beyond a moderate level of ability to concentrate for extended periods of time." *Id*.

[66]*Id*.

[67]*Id*. at p. 237.

[68]*Id*. at p. 238.

[69]*Id*. at p. 239.

[70]*Id*. at pp. 238-9.

and information clerk.[71] The ALJ then asked the vocational expert whether working in Acosta's past jobs was consistent with limited intelligence and a limited ability to read.[72] The vocational expert indicated that it was possible for a person with limited intelligence and a limited ability to read to work in Acosta's past jobs.[73] Because she maintains that she reads at a second-grade level and has limited intelligence, Acosta contends that the ALJ should have relied on the vocational expert's response to her attorney's hypothetical and determined that she cannot perform any substantial gainful activity. Acosta relies on a psychological assessment conducted by Dr. Haskel Hoine—a clinical psychologist—to show that the has limited intellectual functioning and that she reads at a second-grade level.

Dr. Hoine conducted his assessment on February 9, 2006. Although the assessment is not part of the record submitted by the Commissioner, the assessment is attached to the brief supporting the Commissioner's decision.[74] In his assessment, Dr. Hoine wrote that Acosta "is currently functioning at the second to third grade level academically in all areas, making it difficult for her not only to read, but also to comprehend adequately complex or medical material."[75] Despite this opinion, substantial evidence supports the ALJ's determination that Acosta can perform substantial gainful work that exists in significant numbers in the national

---

[71]*Id*. at p. 241.

[72]*Id*.

[73]*Id*. at p. 242.

[74]Docket entry # 17, exh. 1. The exhibit is accompanied by a certification that it was inadvertently omitted from the administrative record submitted to the Court.

[75]*Id*. at p. 3.

economy.

First, Dr. Hoine explained that "[i]ndividuals with similar intellectual abilities are generally able to function effectively in menial jobs requiring minimal evaluative judgment and only simple social interaction."[76] He opined that Acosta "is likely to do well in typical social and relatively static and repetitive vocational situations, but will likely experience difficulty in adapting to suddenly changing static and repetitive vocational situations."[77] Second, Acosta reported that she completed the eighth grade.[78] Third, Acosta's work history demonstrates that her reading level and intellectual functioning did not prevent her from performing substantial gainful activity in the past, and logically would not prevent her from doing other substantial gainful activity.[79] Fourth, Acosta testified that after when she quit her job as a meat trimmer because of pain in her right arm, she sought light work—work that is consistent with the ALJ's determination about Acosta's residual functional capacity—showing that Acosta herself believed that she could perform substantial gainful work. At the time she applied for benefits, Acosta reported that she cleaned her home, did her family's laundry, and cared for her granddaughter[80]—activities consistent with the ability to perform light work. Fifth, the vocational expert identified three jobs that exist in the national economy that a person with Acosta's physical capacity and her exertional and non-exertional limitations can perform. Sixth, the

---

[76]*Id*. at p. 5.

[77]*Id*.

[78]SSA record, p. 112.

[79]*Id*. at pp. 59-69.

[80]*Id*. at pp. 70 & 95.

record reflects only one physical limitation—pain and numbness in Acosta's right arm. Seventh, although Acosta suffers from depression, she does not see a psychiatrist and she treats her depression with anti-depressants.[81] Eighth, even treating Acosta as if she were illiterate—a characteristic contradicted by the record—Acosta's residual functional capacity resulted in a finding of "not disabled" under the Medical-Vocational Guidelines.[82] The Commissioner was not required to adopt the vocational expert's answer to the attorney's hypothetical question where other evidence indicated that Acosta's reading and writing abilities had not prevented her from performing substantial gainful work in the past.

The evidence discussed above supports the Commissioner's determination that Acosta can perform substantial gainful work that exists in the national economy. Having satisfied the Commissioner's burden at step five to identify alternative work that Acosta can perform, the burden shifted back to Acosta to prove that she is unable to perform the alternative work. Acosta did not prove that she is unable to perform the alternative work. Rather than make an error of law, the Commissioner reached the only logical conclusion in this case–Acosta is not disabled under the Act.

## Recommendation

Because substantial evidence supports the ALJ's decision that jobs exist in the national economy that Acosta can perform, I recommend that Acosta's request for relief (docket entry # 3) be DENIED and that the Commissioner's decision denying Acosta's applications for benefits be AFFIRMED.

---

[81]*Id*. at pp. 128, 132, 165 & 172.

[82]*See* 20 C.F.R. pt. 404, subpt. P, appx. 2, R. 202.16.

**Instructions for Service and Notice of Right to Object/Appeal**

The United States District Clerk shall serve a copy of this memorandum and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "Filing User" with the Clerk of Court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Written objections to this memorandum and recommendation must be filed within 10 days after being served with a copy of same, unless this time period is modified by the district court.[83]  **Such party shall file the objections with the Clerk of the Court, and serve the objections on all other parties and the Magistrate Judge.** A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections.  A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court.[84]  Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this memorandum and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.[85]

**SIGNED** on September 11, 2007.

_____
NANCY STEIN NOWAK
UNITED STATES MAGISTRATE JUDGE

---

[83] 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b).

[84] *Thomas v. Arn*, 474 U.S. 140, 149-152 (1985); *Acuña v. Brown & Root, Inc.*, 200 F.3d 335, 340 (5th Cir. 2000).

[85] *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).